DECISION AND JUDGMENT ENTRY
This is an appeal from an August 4, 1999 judgment entry of the Lucas County Court of Common Pleas, in which the court found appellant, James Thompson III, guilty of escape, in violation of R.C.2921.34(A) following a bench trial, and sentenced him to two years in prison. Appellant has presented one assignment of error that is:
 "The Defendant-Appellant was Denied the Effective Assistance of Counsel at Trial, in Violation of his Sixth Amendment Rights."
The relevant facts and procedure in this case are as follow.
On December 23, 1998, the grand jury sitting in Lucas County, Ohio filed an indictment in the Lucas County Court of Common Pleas charging appellant with one count of escape, in violation of R.C. 2921.34(A). The indictment contained allegation that appellant, a parolee, failed to report to his parole officer on September 29, 1998, constituting escape.
The trial court appointed counsel to represent appellant. Appellant's counsel filed a motion to dismiss the charge against appellant on the basis that pursuant to the statutory language in effect when appellant was first placed on parole, appellant could not be charged with escape. The trial court denied the motion to dismiss.
Appellant's counsel then filed a motion in limine asking the court to exclude the admission of: 1) evidence of any prior crimes committed by appellant; 2) testimony regarding any of appellant's actions after October 1, 1998; and 3) evidence and testimony regarding any other crimes for which appellant was charged. A judge other than the judge who conducted the bench trial held a hearing on the motion in limine so that appellant's bench trial would not be prejudiced by excluded information.
During the hearing, the parties stipulated that appellant was on parole on September 29, 1998. The judge conducting the hearing ruled that the identity of the crime appellant was paroled for was not admissible at the trial for the escape charge. The judge considering the motion in limine also granted the remaining two portions of the motion with restrictions.
Specifically, the judge considering the motion inlimine ruled that the state was prohibited from presenting proof that appellant not only failed to report to his parole officer on September 29, 1998, but also failed to report in for the next four months. In addition, the judge ruled the state could not show that: 1) appellant's parole officer filed the escape charge after being contacted by a police officer who told her that appellant had been arrested, charged with arson, and released in the early afternoon of September 29, 1998; and 2) appellant did not make any further attempt to contact his parole officer or to report until he was arrested four months after his initial failure to report. The restrictions imposed by the judge considering the motion were that if appellant "opened the door" by introducing evidence to show a reason why he did not report to his parole officer on September 29, 1998 (i.e. that his mother's funeral was that day), the state could then rebut his evidence by presenting the evidence that was excluded pursuant to the motion in limine.
The case then proceeded to bench trial before a different judge. The only witness at the trial was appellant's parole officer, who was called by the state. Her testimony showed that appellant did not report to her as required on September 29, 1998. She left a voice mail message for him at his verified place of residence telling him to report, but he did not reply.
On cross-examination, appellant's counsel stressed that regulations required the parole officer to impose reasonable sanctions for parole violations. She then asked if the parole officer knew on September 29, 1998 that appellant's mother died. The parole officer replied that she did learn that appellant's mother died, but she could not remember the date or whether it was before or after September 29, 1998.
The judge then asked a series of questions regarding the policies of the parole board filing charges of escape when a parolee missed one appointment. The parole officer responded that when a parolee misses one appointment and there is reason to believe the parolee is not going to report to their parole officer, escape charges are to be filed.
The state then rested, and appellant's trial counsel moved for acquittal, pursuant to Crim.R. 29(A). She said, in part:
 "We have heard no evidence, quite frankly, as to the reason he didn't show up, whether or not she — she testified that she is under the APA guideline to be reasonable in imposing sanctions. I would say that missing one appointment is not reasonable. And I just request a judgment of acquittal. Thank you."
The trial judge denied the motion for acquittal.
The trial judge then asked if appellant's trial counsel wished to present a defense, and she replied that the defense rested. She then renewed her motion for acquittal. The trial judge took judicial notice of the administrative code sections relied upon by appellant for the assertion that the parole officer had to impose reasonable sanctions for parole violations. He retired to his chambers to consider the regulations. When he returned he again denied the motion to acquit.
Appellee and appellant then presented closing arguments. After the closing arguments were done, the trial judge indicated that he knew appellant's trial counsel to be an experienced and qualified attorney. He noted that it was unusual that no defense was presented and said he presumed there was a trial tactic reason why no defense was presented. He then offered her the chance to put those reasons on the record, out of his presence. She accepted his offer and made the following statement on the record:
 "My client and I had extensive discussion about whether to present an affirmative defense. It goes back to the ruling by Judge Bowman on the motion in limine and what floodgates that would open. We talked about it at length.
 "It was my decision, and my client's concurrence, that we let the chips fall where they may in term of not presenting the affirmative defense of his attending his mother's funeral that day. Again, it goes back to Judge Bowman's ruling on the motion in limine which would — I disagree with the interpretation of the prosecutor, and I believe — actually, I'm going to make a record of that, if that's all right.
 "Right here I'm going to object that — to that ruling on the motion that any affirmative defense would automatically open the floodgates and would allow the prosecutor to present evidence as to what happened after October 1st. Basically, in weighing the situation, my client and I decided that it was best to keep that door shut, and we proceeded as we have. Thank you."
The prosecutor then added:
 "And on her behalf * * * it's clear that if Mr. Thompson had taken the witness stand for the purpose of giving any explanation whatsoever for his failure to report on September 29th, we likely would have questioned him as to whether or not he ever subsequently gave an explanation for his continued failure to report.
 "Under Judge Bowman's clarification of his ruling, it appears clear that we would have been allowed to do that. So I think that it's clear that the ruling put the defense in a quandry [sic] as to whether or not it was potentially advantageous or disadvantageous for them to open the defendant up to cross examination. And clearly they had to make a tactical decision one way or another. And from a prosecutor's point of view it appears that either one of those decisions would have been problematic but reasonable. * * *."
The trial judge then returned and entered his finding that appellant was guilty of escape. In his remarks before he made his finding, he acknowledged that the statute gave the parole authority the discretion to bring charges against appellant for escape. He then noted that there was no defense provided by appellant and no explanation for not reporting. He said:
 "Quite frankly, I hungered for the reason for not reporting, wanted to know the reason for not reporting, wanted to know the reason for the immediate charge being filed in this case, why one missed appointment all of a sudden resulted in a charge when sometimes it does not. For trial purposes, obviously, that's not appropriate for me to consider."
He went on to state that the requirements of the statute were shown, and that he had no choice but to find appellant guilty.
At a subsequent time, after a pre-sentence investigation report was made, the trial court sentenced appellant. Appellant then filed this appeal.
In support of his sole assignment of error, appellant argues that he received ineffective assistance of trial counsel. He says that his counsel should have found another way to present to the trial court his defense that he failed to report to his parole officer on September 29, 1998 because he was at his mother's funeral. He suggests that his trial counsel should have asked for a continuance so that she could obtain and present to the court evidence such as his mother's death certificate, an obituary, or testimony of persons who knew of his mother's death and of his attendance at her funeral. He says: "Competent trial counsel, knowing that this was her client's defense, would have been prepared to present supporting evidence to the trier of fact, as to why her client did not appear for his appointment with his parole officer." He says that the errors made by his trial counsel cannot be considered valid trial tactics.
Appellee, the state of Ohio, responds that appellant did receive effective assistance of trial counsel. Appellee says that if appellant presented evidence in any form, not just through his own testimony on the stand, indicating that his reason for not reporting to his parole officer on September 28, 1998 was his mother's death and funeral, the ruling on the motion in limine
would have permitted the state to present rebuttal evidence to show that his parole officer had reason to believe appellant would not report to her again.
That evidence included information she learned from the police that appellant was charged with a crime, her failed attempts to reach him at his last known residence, conversations she had with others regarding his whereabouts and her failure to locate him until he was arrested by the Fugitive Task Force three months after he first failed to report. Appellee says: "Consequently, counsel had no legitimate defense and found herself `between a rock and a hard place' with nowhere to turn. If she attempted to show a legitimate reason for his not appearing on his required date due to the death in his family, it would allow the State to present damaging evidence for which Appellant had no reasonable defense." Appellee concludes that the trial tactic decisions reached by appellant's trial counsel were legitimate and her performance did not fall below objective standards of reasonable representation.
The Supreme Court of Ohio has ruled:
 "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, 137, paragraph two of the syllabus.
In addition, there is a presumption in Ohio that an attorney is competent. State v. Jackson (1980), 64 Ohio St.2d 107, 110-111. Finally, the United States Supreme Court has noted:
 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' See Michel v. Louisiana, supra, at 101. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L. Rev. 299, 343 (1983)." Strickland v. Washington (1984), 466 U.S. 668, 689-90.
Applying the above standards to this case, we agree with appellee that appellant cannot meet the first part of the test for ineffective assistance of counsel. Looking at the case as a whole, the performance of appellant's trial counsel did not fall below the objective standard of reasonable representation. She was able to get a ruling keeping out of evidence some very damaging evidence showing that appellant had no reasonable explanation for his continued failure to comply with his reporting requirements for parole. She effectively cross-examined the state's witness, and presented reasonable arguments on appellant's behalf that he was entitled to acquittal.
We are not persuaded that the ruling on the motion inlimine was so narrow that appellant could have avoided the restrictions imposed by the ruling by presenting evidence at trial of his mother's death and funeral in a manner other than through his own testimony. We agree with the state that if appellant had opened the door by presenting any evidence to show that he was at his mother's funeral on September 29, 1998, the state could have presented rebuttal evidence to show that the parole officer had other reasons to believe appellant had absconded and would not be complying with his reporting requirements when she sought the indictment against him for escape.
Since appellant cannot meet the first part of the two-part test for ineffective assistance of counsel, we need proceed no further with our analysis to consider the second part of the test. Appellant's sole assignment of error is not well-taken.
After carefully reviewing the record and considering the arguments presented on appeal, we conclude that appellant was not prejudiced or prevented from having a fair trial. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
Peter M. Handwork, J., Richard W. Knepper, P.J.,George M. Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.